**UNITED STATES of America,
Petitioner,**

**v.**

**ART METAL–U. S. A., INC. and Steel
Sales, Inc., Respondents.**

Civ. A. No. 80–21.

United States District Court,
D. New Jersey.

Feb. 27, 1980.

Robert J. DelTufo, U. S. Atty. by Robert Beller, Asst. U. S. Atty., Newark, N. J., for petitioner.

Slavitt, Fish & Cowen, P. A. by Martin H. Cowen, Newark, N. J., for respondents.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This action involves a petition filed by the United States, on behalf of the Inspector General of the General Services Administration, to enforce a subpoena *duces tecum* for certain tax and related business records of respondents Art Metal-U.S.A., Inc. and Steel Sales, Inc., Art Metal's wholly-owned subsidiary. The Inspector General seeks the objects of the subpoena in connection with an investigation of payoffs and other fraudulent practices allegedly involving Art Metal as well as other government contractors. Respondents were ordered to show cause why the subpoena should not be enforced.

The court offered the parties an evidentiary hearing concerning enforcement but both sides have agreed to have the matter decided on the basis of the submitted memoranda, affidavits and oral argument.

Respondents resist enforcement on three grounds. They contend (1) that a third-par-

886

ty administrative subpoena cannot be enforced where there is pending a parallel criminal investigation of the target of the administrative inquiry; (2) that enforcement would violate the public policy manifested in I.R.C. § 6103; and (3) that the subpoenaed documents are beyond the scope of the Inspector General's subpoena power. For the following reasons the court rejects all of respondents' arguments and rules that the subpoena shall be enforced.

*1. The LaSalle objection.*

■ Respondents rely principally on *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) for their claim that the likelihood or imminence of criminal proceedings renders enforcement of a related administrative subpoena impermissible. *LaSalle* came before the Supreme Court as a result of confusion among the circuits concerning the circumstances under which IRS summonses could be enforced. *See id.* at 305, 98 S.Ct. at 2362. Third Circuit cases preceding *LaSalle* involved questions of the enforceability of such summonses *before* commencement of criminal actions and, although not squarely presented with the question of enforcement after the criminal process had begun to run, the clear import of the reasoning of those pre-*LaSalle* cases is that post-commencement enforcement is flatly prohibited. *See United States v. Lafko*, 520 F.2d 622, 624–25 (3d Cir. 1975); *United States v. McCarthy*, 514 F.2d 368, 371 (3d Cir. 1975); *United States v. Fisher*, 500 F.2d 683, 687–88 (3d Cir. 1974), *aff'd*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In *LaSalle* the Supreme Court appeared to agree with the Third Circuit and to lay down an absolute prohibition on the enforcement of IRS summonses once the criminal process has effectively been commenced. *LaSalle, supra* at 311–14, 316–18, 98 S.Ct. at 2365–66, 2367–68. *See also SEC v. Dresser Industries, Inc.*, No. 78–1702, slip op. at 13 (D.C.Cir. Nov. 19, 1979) ("In *LaSalle,* the Court agreed *that in no case did § 7602 authorize a summons after the IRS had recommended prosecution.*") (emphasis supplied).

■ The Third Circuit has recently placed upon *LaSalle* the following gloss. Once the IRS has formally recommended prosecution to the Justice Department, IRS summonses may not be enforced in any case. *United States v. Garden State National Bank*, 607 F.2d 61, 69–70 (3d Cir. 1979). However, if there has been merely an institutional (*i. e.,* intra-agency) commitment to refer the matter to Justice, but no formal recommendation, then a summons may be enforced unless the party opposing enforcement is able to show that there is no civil purpose for the summons. *United States v. Genser*, 602 F.2d 69, 71 (3d Cir. 1979).

■ Applying the *Genser* construction of *LaSalle* to administrative summonses or subpoenae outside the IRS context, it is clear that the mere likelihood or even the imminence of criminal proceedings does not bar enforcement of a civil summons or subpoena so long as (1) the agency in question has not itself made a formal recommendation to the Justice Department to prosecute; and (2) the summons or subpoena has a civil purpose.

■ In the instant case there is no evidence that the Inspector General has formally recommended that the Justice Department prosecute Art Metal. In addition, Art Metal has failed to carry its burden of disproving that the Inspector General's subpoena has a civil purpose. *See Garden State, supra,* 607 F.2d at 69. The Inspector General has the responsibility and the power to conduct, supervise and coordinate audits and investigations relating to GSA programs in order to promote efficiency and to prevent fraud and abuse. *See* 5 U.S.C. App. I § 4(a)(1) & (3). Unlike the IRS, which by statute loses its power to continue civilly once the Justice Department begins to move criminally (*see* I.R.C. § 7122(a)), the Inspector General's powers are not so limited. *See generally* 5 U.S.C. App. I § 4(a)(1) & (3). This independence of the Inspector General in relation to the Department of Justice is to be contrasted with the relationship between IRS and Justice,

which historically has been an extremely close one. *See, e. g., LaSalle, supra,* 437 U.S. at 307–13, 98 S.Ct. at 2362–65. Given the Inspector General's relative independence, the court concludes that, under *Genser, supra,* the likelihood or imminence of criminal proceedings to be commenced independently (and *not* at the behest) of the administrative agency is no bar to enforcement of the subpoena here at issue. *See also United States v. First National State Bank of New Jersey,* 616 F.2d 668, 672 (3d Cir. 1980) ("Proof of a criminal investigation does not preclude the existence of a civil investigative purpose for the summons, and it is the presence of the latter which is the critical factor, and which must be negated by the . . . [party opposing enforcement].")

## 2. The Public Policy of I.R.C. § 6103.

■ Respondents' second ground for resisting enforcement of the subpoena is that the public policy underlying § 6103 of the Internal Revenue Code prohibits disclosure of their tax returns to the Inspector General. This argument can be disposed of quickly.

■ Section 6103 applies to bar disclosure of tax returns or return information by "[any] officer or employee of the United States", I.R.C. § 6103(a)(1), once such documents are in the possession of the United States. Nothing in the statute or in its legislative history can be reasonably regarded as barring any agency of the United States from gaining such documents where relevant to an administrative investigation or to civil discovery. *See, e. g.,* S.Rep.No. 94–938, 94th Cong.2d Sess. 315–319, *reprinted in* [1976] U.S.Code Cong. & Admin.News pp. 2897, 3744–49. Indeed, were this court to accept respondents' unusual "public policy" argument, I.R.C. § 6103 would effectively change the rules of civil discovery. *See Heathman v. United States District Court for the Central District of California,* 503 F.2d 1032, 1035 (9th Cir. 1974); 4 Moore's Federal Practice ¶ 26.61[5.–2] at 294–96 (2d ed. 1979). In short, § 6103 is not triggered until *after* the United States comes into possession of tax returns or return information. That is not yet the case in the instant situation.

## 3. The Scope of the Inspector General's Subpoena Power.

Respondents' third reason for resisting enforcement of the subpoena is that the documents in question are beyond the scope of the Inspector General's subpoena power.

■ With regard to respondent Art Metal, this argument is meritless. The Inspector General Act gives the Inspector General the responsibility and authority to conduct and supervise "activities . . . for the purpose of . . . preventing and detecting fraud and abuse" in government programs. 5 U.S.C. App. I § 4(a)(3). It cannot fairly be doubted that acquisition of the tax returns and related documents of a GSA contractor pursuant to an investigation of fraud is within the scope of the Inspector General's powers.

With regard to Steel Sales, Inc., the respondent takes the position that because it is not an express party to the GSA contracts, the Inspector General is exceeding his subpoena power by seeking tax information from it. This argument is also rejected. Administrative agencies vested with investigatory and subpoena powers may compel the production of information and documents from third persons who are not expressly within their regulatory jurisdiction, so long as the information sought is relevant and necessary to the effective conduct of their authorized and lawful inquiry. *Freeman v. Fidelity-Philadelphia Trust Co.,* 248 F.Supp. 487, 492 (E.D.Pa.1965); *FCC v. Cohn,* 154 F.Supp. 899, 906 (S.D.N.Y.1957). *See also Comet Electronics, Inc. v. United States,* 381 F.Supp. 1233, 1241 (W.D.Mo. 1974), *aff'd,* 420 U.S. 999, 95 S.Ct. 1439, 43 L.Ed.2d 758 (1975). Based on the submitted papers and affidavits, the court deems the subpoenaed materials relevant and necessary to the Inspector General's lawful and authorized inquiry and therefore holds that the subpoena as it relates to Steel Sales is enforceable.

888

For all of the foregoing reasons the court concludes and rules that the subpoena directed to Art Metal-U.S.A., Inc. and Steel Sales, Inc. shall be enforced. The court is on this date filing an order in conformity with this opinion.